# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TDE PETROLEUM DATA SOLUTIONS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-1821 |
| | § | |
| AKM ENTERPRISE, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant AKM Enterprise, Inc., d/b/a Moblize, Inc. ("Moblize"). Dkt. 24. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

## I. BACKGROUND

Plaintiff TDE Petroleum Data Solutions, Inc. ("TDE") is the owner of all rights, title, and interests in United States Patent No. 6,892,812 (the "'812 Patent"), titled "Automated Method and System for Determining the State of Well Operations and Performing Process Evaluation" (the "Patented System"). Dkt. 1. The Abstract of the '812 Patent states:

> An automated method and system for determining the state of a drilling or other suitable well operations includes storing a plurality of states for the well operation. Mechanical and hydraulic data is received for the well operation. Based on the mechanical and hydraulic data, one of the states is automatically selected as the state of the well operation. Process evaluation may be performed based on the state of the well operation.

Dkt. 1, Ex. 1 (the '812 Patent). TDE provides services that allow rig operators to monitor and organize global rig operations. Dkt. 1. To provide these services, TDE uses technology developed

by Noble Drilling Services, which is the company that originally developed the '812 Patent. TDE began offering services using the '812 Patent's methods in 2009. *Id.*

TDE discovered that Moblize entered the marketplace some time before October 2014 and that Moblize offered a service that TDE contends infringes one or more claims of the '812 Patent. *Id.* Moblize offers a service that aggregates data from the field source to provide real time analytics on well optimization and "smart rig state" detection. *Id.* TDE met with Moblize's president to discuss the '812 patent on or about January 21, 2015. *Id.* TDE contends that Moblize continued to sell its infringing services after that meeting, which TDE asserts constitutes a knowing violation of U.S. patent law. *Id.*

TDE filed this lawsuit on May 4, 2015. *Id.* TDE contends that Moblize has infringed the '812 Patent by offering its automated determination of well states services in violation of 35 U.S.C. § 271. *Id.* TDE asserts that it is entitled to increased damages and attorneys' fees under 35 U.S.C. §§ 284 and 285 because Moblize's actions were willful and in deliberate disregard of TDE's rights. *Id.* TDE additionally claims that Moblize engaged in contributory infringement by providing data obtained using the Patented System to Moblize's customers for their use. *Id.* TDE contends that it has been irreparably harmed by Moblize's actions and will continue to be harmed unless Moblize is permanently enjoined from infringing the '812 Patent. *Id.*

Moblize now moves to dismiss the lawsuit, claiming that the Patented System is a patent-ineligible abstract idea under *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014). Dkt. 24. It contends that the claims of the '812 Patent are directed to the age-old concept of applying mathematical rules to interpret data, which is an abstract idea, and that the steps of the '812 Patent contain no inventive concepts that would transform the abstract idea into a patent-eligible application. *Id.* TDE argues, conversely, that the '812 Patent discloses a novel method that did not

2

previously exist in the energy sector and that its claims build and improve upon existing technological processes.  Dkt. 30.

## II. LEGAL STANDARD

Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In turn, a party against whom claims are asserted may move to dismiss those claims when the pleader has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a pleading must offer "'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) ("[N]aked assertions devoid of further factual enhancement," along with "legal conclusions" are not entitled to the presumption of truth). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

3

### III. ANALYSIS

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of title."   While Congress "'contemplated that patent laws would be given a wide scope,'" the United States Supreme Court has provided for three exceptions to section 101's patent-eligibility principles. *Bilski v. Kappos*, 561 U.S. 593, 602, 130 S. Ct. 3218 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308, 100 S. Ct. 2204 (1980)).  These exceptions are "laws of nature, physical phenomena, and abstract ideas." *Chakrabarty*, 447 U.S. at 309.   Of course, courts should be mindful that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply law of nature, natural phenomena, or abstract ideas.'" *Alice Corp.*, 134 S. Ct. at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. __, 132 S. Ct. 1289, 1293 (2012)).

An invention is not patent-ineligible simply because it involves an abstract concept.  Instead, if the abstract concept is applied to "a new and useful end," it remains eligible for patent protection. *Id.* (citing *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S. Ct. 253 (1972)).  To differentiate, courts must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 134 S. Ct. at 2355.  If so, courts next ask if the elements of the claim contain an "inventive concept" that "transforms" the abstract idea into a patent-eligible application.  *Id.* at 2357.  To answer this question, court must "consider the elements of each claim both individually and 'as an ordered combination.'"  *Id.* at 2355 (quoting *Mayo Collaborative Servs.*, 132 S. Ct. at 1297–98).  "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"  *Id.* at 2357 (quoting *Mayo Collaborative Servs.*, 132 S. Ct. at 1297).

4

A.    *Alice Corp.* **Step One**

The court thus first asks, are the claims in the '812 Patent directed to an abstract concept? TDE argues that the '812 Patent is directed to a tangible, new technical solution to a problem unique to the energy sector.  Dkt. 30 at 9.  It asserts that "[a]t their core, the '812 Patent's claims recite methods for automated well state detection, which include the necessary steps of: (1) storing well states; (2) receiving mechanical and hydraulic data from sensors in the well operation; (3) verifying the data against thresholds that in some embodiments require use of application-specific programmed hardware; and (4) selecting a well state."  *Id.*

Moblize argues, on the other hand, that Claim 1 "involves nothing more than the basic steps of (1) making a list of possible values (drilling 'states'), (2) receiving data about those values, (3) applying mathematical rules to the data (by comparing data to the 'limit')[,] and (4) interpreting the results to choose a value from the list."  Dkt. 24.  Moblize contends that "[a]t their core, these steps state the fundamental concept of interpreting data by applying mathematical rules."  *Id.*  It asserts that TDE's claimed method falls squarely within the type of data-interpretation claims that the Federal Circuit and district courts have held are abstract.  *Id.*

Moblize mainly relies on the following cases to support its argument that TDE's claims recite an abstract idea: *Alice Corp.*; *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014); and *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).  In *Alice*, the U.S. Supreme Court reasoned that the claims at issue were "drawn to the concept of intermediated settlement," which is a "fundamental economic practice long prevalent in our economic system." *Alice*, 134 S. Ct. at 2356.  The Court held that intermediated settlement was an abstract idea beyond the scope of section 101.  *Id.*

In *Digitech Image Technologies, LLC*, 758 F.3d at 1351, the Federal Circuit considered whether a process for generating a device profile tied to a digital image processing system was an abstract idea that could not be patented.  It held that the method in the patent was an abstract idea "because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine." *Digitech Image Techs.*, 758 F.3d at 1350.  It noted that claim 10 of the patent at issue recited a process of taking two data sets and combining them into one meaningful data set. *Id.* at 1351.  The data sets were generated by taking existing information and organizing it into a new form.  *Id.*  The court explained that "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  *Id.*

In *Planet Bingo*, the Federal Circuit considered whether two patents relating to methods and systems for managing the game of bingo claimed patentable subject matter under *Alice Corp.* and section 101.  576 F. App'x at 1006.  Planet Bingo owned the patents, and it filed an infringement claim against VKGS LLC d/b/a Video King ("Video King").  *Id.*  The district court granted summary judgment in favor of Video King, finding that the each method claim encompassed the abstract idea of managing a bingo game and, though the claims employed a computer to store numbers, assign identifiers, and other miscellaneous things, the computer added "'nothing more than the ability to manage . . . Bingo more efficiently.'"  *Id.* at 1007.  Planet Bingo argued that the computers used for the method handled so many numbers ("thousands, if not millions") that it would be impossible to carry out the method manually.  *Id.* at 1008.  The court, however, observed that the claims as written actually required, at most, two sets of numbers, a player, and a manager.  *Id.*  The court declined to address whether an invention that handled thousands or millions of numbers, as Planet Bingo argued, would be eligible for a patent.  *Id.*

6

TDE primarily relies on *Wavetronix LLC v. Iteris, Inc.*, No. A-14-CA-970-SS, 2015 WL 300726 (W.D. Tex. Jan. 22, 2015), for its argument that the '812 Patent's methods and systems for automated well state detection are not abstract. *See* Dkt. 30 at 10–12. In *Wavetronix*, the federal district court for the Western District of Texas considered plaintiff Wavetronix, LLC's motion for a preliminary injunction. 2015 WL 300726, at *1. Wavetronix owns a patent covering its SmartSensor Advance invention, which uses radar to track the speed and location of vehicles at an intersection, uses the data to calculate an estimated time of arrival at the intersection, and determines if the vehicle will arrive at the intersection within the "dilemma zone," a zone in which a driver faces the dilemma of either hitting the brakes to stop in time for the red light, or stepping on the gas to make it through the light in time. *Id.* The invention advises the traffic controller that the light "ought to remain green rather than turn yellow" if vehicles will be in the dilemma zone. *Id.*

The *Wavetronix* court addressed whether the patent was directed to an abstract idea in its analysis of the likelihood of success prong of the preliminary injunction standard. *Id.* at *6. The defendant, relying on *Alice Corp.*, argued that a "'human with no more than a high-school level education can readily accomplish each of the steps taught [by the patent at issue] with nothing more than a paper and a pencil.'" *Id.* The court disagreed that *Alice Corp.* was applicable, finding that the patent at issue "improved upon existing technological processes for providing dilemma zone protection." *Id.* It appears that the court, rather than addressing whether the patent was directed to an abstract idea, determined that, regardless, Wavetronix improved upon existing technological processes by enabling "real-time tracking of vehicles as they approach an intersection." *Id.*

Here, TDE's arguments that the claims in the '812 Patent resemble those in the *Wavetronix* case and that the method is not abstract because it improves upon existing well operation recognition systems are more appropriately considered in the second step of the *Alice Corp.* analysis. The steps

7

that both Moblize and TDE contend are at the core of the '812 Patent are similar to those in *Planet Bingo* and *Digitech*. They are simple steps of storing data, receiving data, and using mathematics or a computer to organize that data and generate additional information. This is an abstract concept and not patent-eligible unless there is an "inventive concept" that "transforms" the abstract idea into a patent-eligible application.

**B.    *Alice Corp.* Step Two**

TDE argues that the inventive concept behind the '812 Patent's claims stems from its combination of elements: (1) storing well states; (2) receiving mechanical and hydraulic data from sensors in the well operation; (3) verifying the data against thresholds that in some embodiments requires use of application-specific programmed hardware; and (4) automatically selecting a well state. Dkt. 30 at 14–15. TDE contends that these steps, taken together, yield a new and useful application to well state recognition. *Id.* at 15. TDE points out that the technological advantage over preexisting well operations management systems is the ability to determine well states in or near real time, which a human could not do. *Id.* TDE additionally argues that the '812 Patent's claims contain meaningful limitations that restrict the scope of the invention to certain parameters and data metrics disclosed in the specifications so that the patent owners are not monopolizing all well state detection. *Id.* It asserts that the claims embody an inventive concept that transforms the idea into a patent-eligible application because the claims require programmed hardware tailored to implement the method, not general processors. *Id.* at 16. Finally, TDE argues that the '812 Patent's close connection to a specific machine, the oil rig, supports a finding that it is patent-eligible. *Id.* at 17.

Moblize asserts that TDE ignores the actual claim language when making its arguments. Dkt. 46. Moblize argues that TDE "greatly overstates the complexity actually claimed." *Id.* Moblize notes that, for instance, Claim 1 requires only "a plurality" of states, "mechanical and

8

hydraulic data," and a comparison using basic math to determine the "state." *Id.* Moblize contends that TDE's focus on computerization is misplaced because using a computer to perform tasks more quickly is not sufficient to confer patent eligibility. *Id.* at 3 (citing *Intellectual Ventures I LLC v. Capital One Fin.*, No. 2014-1506, slip op. at 6 (Fed. Cir. July 6, 2015)).

Moblize asserts that TDE's argument about meaningful limitations related to use of machines is a red herring because the majority of the claims in the '812 Patent do not even include the word "machine" or any requirement that specific integrated circuits be used. *Id.* at 4. Additionally, Moblize points out that the question from *Alice Corp.* is *not* whether the patentee can point to some narrow embodiment that falls within the claims but whether the claims themselves *also* cover embodiments that are not narrowly limited. *Id.* Moblize contends that even the means-plus-function claims (i.e., Claim 31) are described as being implemented on a general purpose processor *or* with programmed hardware such as application-specific circuits. *Id.* at 4–5. Since the claims are broad enough to be implemented on a general purpose processor, they are not really limited at all. *Id.* at 5.

Moblize argues that TDE's argument that the claims are patent-eligible because of the connection to an oil rig is similarly flawed, as having a close connection to an oil rig does not transform the abstract claim into a patent-eligible application. *Id.* An oil rig itself is generic, and TDE's reference to integrated sensors in its argument cannot be linked to any language in the actual claims. *Id.* at 5–6. Moreover, Moblize argues that the claims do not recite any effect on the operation of an oil rig, so the alleged "close connection" to an oil rig is "illusory." *Id.*

### 1.    *Technological Advantage*

In support of its argument that the '812 Patent discloses a technological advantage over preexisting well operations management systems, TDE cites *California Institute of Technology v.*

*Hughes Communications, Inc.*, 59 F. Supp. 3d 974, 994 (C.D. Cal. 2014).  In *California Institute of Technology*, the court looked at the specific limitations of patents relating to "a particular form of error correction code" or software.  59 F. Supp. 3d at 976.  The court found that the claims were generally directed to abstract concepts, but that the asserted claims contained "meaningful limitations that represent sufficiently inventive concepts" and were thus patentable.  *Id.* at 994.  The court pointed out that even though many of the limitations were mathematical algorithms, they were narrowly defined and tied to a specific error correction process.  *Id.*  It found that the limitations were "not necessary or obvious tools for achieving error correction, and they ensure that the claims do not preempt the field of error correction."  *Id.*  The court specifically noted that while the calculations involved could be performed by a person with a pencil and paper, this analysis is not helpful for computer inventions as a pencil and paper can rarely produce the actual effect of the computer invention.  *Id.*  It pointed out that, with regard to software, "a human could spend months or years writing on paper the 1s and 0s comprising a computer program" and in the end he would just "be left with a lot of paper that obviously would not produce the same result as the software."  *Id.*

The court finds the arguments in *California Institute of Technology* particularly compelling with regard to the invention discussed in that case.  However, here the claims are not narrowly defined so as to ensure the claims do not preempt the field for well state detection.  Instead, Claim 1, for instance, involves storing "a plurality of states for well operation," receiving well operation from "a plurality of systems," comparing the data to predefined limits, and selecting a state of well operation based on that comparison.  Dkt. 1, Ex. 1.  The only limit is that there must be more than one state, more than one system from which to receive data, and more than one state of well operation.  Thus, there are essentially no limits—it covers practically any system for determining the state of well operation.

Moreover, unlike the software discussed in *California Institute of Technology*, it would not take months or years of writing on paper to replicate the method described in the '812 Patent, and recreating the method with a pencil and paper would have the same type of application as automating it on a computer.  The only advantage of using the automated system is that, as TDE points out, real-time results are available.  However, "[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not."  *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).  "[S]imply appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit claim scope for purposes of patent eligibility."  *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013), *aff'd*, 134 S. Ct. 2347 (2014).[1]

## 2.    *Connection to Machines*

TDE next argues that the claims are patent-eligible because they require programmed hardware tailored to implement the Patented System, not general processors, stating that the four steps of the Patented Method require specific machines to accomplish the steps.  Dkt. 30 at 16.  It points to the following language in the detailed description of the '812 Patent:

---

[1] Though TDE relied on the *Wavetronix* case for its argument that its claims are not abstract under the first *Alice Corp.* step and does not address it in its second-step analysis, the case is more on point for the second step.  In *Wavetronix*, the court specifically found that the patent at issue in that case "improved upon existing technological processes" because it, unlike previous dilemma zone protection systems, actually solved a problem by improving on existing technology.  2015 WL 3000726, at *6.  The previous systems had used methods other than radar, such as loops buried in the ground, to determine vehicles' arrival in the dilemma zone.  *Id.*  The patent at issue did not claim the unimproved applications, just the narrow application using radar.  *Id.*  Here, the claims as written, unlike the *Wavetronix* claims, do not add an inventive concept to existing technology.  The only advantageous application highlighted by TDE is that the well state data can be monitored in real time, by using a generic computer or other machines.  This is not enough of an innovation to make the claims patent-eligible.

> In a particular embodiment, the monitoring module and its various components and modules may comprise logic encoded in media. The logic may comprise software stored on a computer-readable medium for use in connection with a general purpose processor, or programmed hardware such as application-specific integrated circuits (ASIC), field programmable gate arrays (FPGA), digital signal processors (DSP) and the like.

'812 Patent, col. 6, ln. 9–16. While certainly this detailed description indicates that specific machines can be used to accomplish the steps, it also demonstrates that specific machines are not required and that a "general purpose processor" may be used. This argument does not support TDE's position that the abstract claims in the '812 Patent are meaningfully limited.

TDE also contends that the claims in the '812 Patent are patent-eligible because they are connected to an oil rig, citing *Fairfield Industries, Inc. v. Wireless Seismic, Inc.*, No. 4:14-cv-2972, 2014 WL 7342525 (S.D. Tex. Dec. 23, 2014) (Ellison, J.). Dkt. 30 at 17. In *Fairfield*, Judge Ellison denied a motion to dismiss an infringement case involving a patent for a method of seismic data acquisition relating to transmitting data from a seismic sensor array to a central control station. *Fairfield*, 2014 WL 7342525, at *1. Judge Ellison determined that the claims may have been directed to an abstract idea, but that, regardless, the claims easily satisfied the second step of the *Alice Corp.* test. *Id.* at *4. Specifically, the claims were for a "specific method of data transmission that is a new and useful application of a generic relay system" and that the claim built on the abstract concept of a relay system by adding nonconventional elements that narrowed the scope of the claim and minimized the risk of preemption. *Id.* at *6.

Judge Ellison determined that the claim's "close connection to a specific machine, the seismic acquisition unit, further support[ed] a finding of patent-eligibility," relying on the machine-or-transformation test. *Id.* Under this test, which provides a "useful important clue" for "determining whether some claimed inventions are processes under § 101," an invention is a process

12

if (1) it is tied to a particular machine or apparatus, or (2) it transforms an article into a different state or thing." *Bilski*, 561 U.S. at 602–03.  Judge Ellison noted that for the connection of a machine to have any meaning in the analysis, its use must "impose meaningful limits on the claim's scope," "play a significant part in permitting the claimed method to be performed," and not "function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *Fairfield*, 2014 WL 7342525, at *6 (citations and internal quotations marks omitted).  Judge Ellison found that the use of the seismic acquisition units in the patent at issue in *Fairfield* passed these hurdles and that since the use of the units did "not merely substitute technology for an abstract idea, the connection between the claim and the acquisition units [was] highly probative of patent-eligibility." *Id.* at *7. The use of an oil rig in this case is completely different.  While certainly the use of an oil rig is central to the claims, it does nothing to impose meaningful limits on the claim's scope.

## C.      Factual Disputes and Prematurity

TDE's final argument is that significant factual disputes pervade the analysis making a ruling on patent-eligibility at this stage premature.  Dkt. 30 at 18.  TDE concedes that patent eligibility is a question of law but points out that it "'may be informed by subsidiary factual issues.'" *Id.* (quoting *Accenture Glo. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013)). TDE contends that there are several claim terms that raise substantial factual claim construction issues and that Moblize relied on unsupported factual assertions in its motion.  *Id.* at 19.  Moblize asserts that it made no "factual assertions," it merely used a hypothetical example.  With regard to the claim construction issues, Moblize argues that they do not change the analysis.  Dkt. 46 at 6–7.

First, the court did not rely on Moblize's hypothetical in reaching its conclusions, so there is no need to address that argument.  With regard to the contention that the motion is premature, the court agrees with Moblize that TDE's claim construction contentions do not impact the analysis.

While undoubtedly there would be disputes about the meaning of certain terms if this case were to proceed to a *Markman* hearing, none of the terms that TDE contends will be in dispute prohibit the court from fully understanding the basic character of the claims.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101."); *Fairfield*, 2014 WL 7342525, at *4 ("[T]he court is satisfied that it has the full understanding of the basic character of the claimed subject matter required for an eligibility determination.").  In *Content Extraction & Transmission*, the Federal Circuit affirmed a case in which the district court had granted a motion to dismiss prior to construing the claims.  776 F.3d at 1349.  In considering the motion to dismiss, the district court had construed the terms in the manner most favorable to the patent owner and determined that the claims were patent-ineligible.  *Id.*  The Federal Circuit held, also construing the claims in the patent owner's favor, that "none of [the patent owner's] claims amount[ed] to 'significantly more' than [an] abstract idea."  *Id.*  Here, likewise, none of TDE's claims amount to significantly more than an abstract idea, even construing all the claims in TDE's favor.[2]

---

[2] TDE attempts to limit Claim 31's "means for" elements by providing guidance from the specification, but even the specification information highlighted by TDE indicates that the means "may" use certain machines or specific sub-modules.  *See* Dkt. 30 at 19–21.  There is no dispute that the patent *could* be tied to certain machines.  Nothing in the patent, however, *requires* these specific components.  The claims, as written, are not meaningfully limited, and TDE's construction still does not meaningfully limit them.

**IV. CONCLUSION**

The court finds that the claims in the '812 Patent are not patent-eligible.  Accordingly,

Moblize's motion to dismiss TDE's patent infringement lawsuit is GRANTED.  TDE's claims are

DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on September 11, 2015.

_____
Gray H. Miller
United States District Judge